SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
ccardon@sheppardmullin.com
JAY T. RAMSEY, Cal Bar No. 273160
jramsey@sheppardmullin.com
ALYSSA SONES, Cal Bar No. 318359
asones@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIAN JURDI, individually and on behalf of all others similarly situated;,<br><br>Plaintiff,<br><br>v.<br><br>CARTER'S, INC., a Georgia corporation; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 2:24-cv-04651-JLS-BFM<br><br>*Hon. Josephine L. Staton*<br><br>**DEFENDANT CARTER'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Declaration of Keyur Patel, Request for Judicial Notice, and Proposed Order*]<br><br>Date: January 31, 2025<br>Time: 10:30 a.m.<br>Ct. Rm.: 8A |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 31, 2025, at 10:30 a.m., or as soon thereafter as the Motion may be heard in Courtroom 8A of the above entitled Court located at the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, the Honorable Josephine L. Staton presiding, specially appearing Defendant Carter's, Inc. ("Carter's") will, and hereby does, move the Court for an order dismissing this action in its entirety with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 4, 2024.

Carter's moves to dismiss Plaintiff Lillian Jurdi's First Amended Class Action Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court lacks personal jurisdiction over Carter's. Specifically, the Court lacks personal jurisdiction over Carter's because Carter's is not subject to either general or specific jurisdiction.

In addition, Carter's moves to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim upon which relief can be granted. Specifically, the Court should dismiss Plaintiff's claim because the FAC fails to state facts sufficient to constitute a cause of action against Carter's.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Keyur Patel, Carter's Request for Judicial Notice filed concurrently herewith and the exhibits attached thereto, and all pleadings and papers in the Court's file, the record and files herein, and upon such oral argument as may be made at the hearing on the Motion and such other evidence as may be admitted at the time of the hearing on the Motion.

Dated: December 11, 2024 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *<u>/s/ Craig Cardon</u>*
P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Allegations In The FAC ..... 3

B. Carter's Limited Contacts With California ..... 4

III. THE COURT SHOULD DISMISS THE FAC FOR LACK OF PERSONAL JURISDICTION ..... 5

A. Burden Of Proof And Legal Standard Under Rule 12(b)(2) ..... 5

B. Carter's Is Not Subject To General Jurisdiction In California ..... 6

C. Carter's Is Not Subject To Specific Jurisdiction In California ..... 6

1. Carter's did not purposefully direct its conduct at California ..... 6

2. Plaintiff's claims do not arise out of or relate to Carter's California contacts ..... 10

3. Exercising jurisdiction over Carter's in California would be unreasonable ..... 10

IV. THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A CLAIM ..... 10

A. Legal Standard ..... 10

B. Section 638.51 Applies Only To Telephone Communications, Not Website Technologies ..... 11

1. Statutory text and structure ..... 11

2. Legislative history ..... 13

a. Assembly Bill 929 ..... 13

b. Assembly Bill 1924 ..... 15

3. California Consumer Privacy Act ..... 16

4. Public policy ..... 17

5. The statute must be construed in Defendant's favor ..... 18

C. Even If Website Technologies Can Be Trap And Trace Devices, The TikTok Pixel Is Not A Trap And Trace Device ..... 19

D. Defendant Is Exempted From Liability As A Provider Of An Electronic Communication Service ........ 20

E. *Moody*, *Greenley*, And *Shah* Are Distinguishable ........ 21

V. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*AMA v. Multimedia, LLC v. Wanat*
970 F.3d 1201 (9th Cir. 2020) ........ 7

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*
551 F.2d 784 (9th Cir. 1977) ........ 5

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*
11 F.4th 972 (9th Cir. 2021) ........ 7

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) ........ 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ........ 10

*In re Boon Glob., Ltd.*
923 F.3d 643 (9th Cir. 2019) ........ 5

*Briskin v. Shopify, Inc.*
87 F.4th 404 (9th Cir. 2023) ........ 9

*Brown v. Google LLC*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 20

*Carroll v. J.M. Smucker Company*
No. 22-cv-08952, 2023 WL 4053796 (N.D. Cal. June 15, 2023) ........ 8

*Copley Press, Inc. v. Superior Court*
39 Cal.4th 1272 (2006) ........ 17, 18

*D'Angelo v. Gen. Motors Co.*
No. 23-CV-0985, 2024 WL 1480487 (S.D. Cal. Mar. 11, 2024) ........ 8

*Daimler AG v. Bauman*
571 U.S. 117 (2013) ........ 5, 6

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*
592 U.S. 351 (2021) ........ 5, 6, 10

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021)........19

*Greenley v. Kochava, Inc.*
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........21

*Hale v. Morgan*
22 Cal.3d 388 (1978)........18

*Heiting v. Marriott Int'l, Inc.*
No. 2:23-CV-10822, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024)........passim

*Herbal Brands, Inc. v. Photoplaza, Inc.*
72 F.4th 1085 (9th Cir. 2023)........7, 9

*Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*
29 Cal.4th 911 (2003)........13

*Kearney v. Salomon Smith Barney, Inc.*
39 Cal.4th 95 (2006)........19

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002)........20

*Larkin v. Workers' Comp. Appeals Bd.*
62 Cal.4th 152 (2015)........11

*Leocal v. Ashcroft*
543 U.S. 1 (2004)........19

*Lexin v. Superior Court*
47 Cal.4th 1050 (2010)........16

*LVRC Holdings LLC v. Brekka*
581 F.3d 1127 (9th Cir. 2009)........18

*Martin v. Outdoor Network LLC*
No. 2:23-CV-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024)........9

*Mavrix Photo, Inc. v. Brand Techs. Inc.*
647 F.3d 1218 (9th Cir. 2011)........5, 7

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022)........20

*Moody v. C2 Educational Systems Inc.*
No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024)....................21

*Morrill v. Scott Fin. Corp.*
873 F.3d 1136 (9th Cir. 2017)....................8

*People v. Mobile Oil Corp.*
143 Cal.App.3d 261 (1983)....................19

*People v. Moon*
193 Cal.App.4th 1246 (2011)....................19

*People v. Mutter*
1 Cal.App.5th 429 (2016)....................19

*In re Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*
9 F.C.C. Rcd. 1764 (1994)....................21

*Saleh v. Nike, Inc.*
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................19

*Saracco Tank and Welding Co. v. Platz*
65 Cal.App.2d 306 (1944)....................18

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797 (9th Cir. 2004)....................6, 9, 10

*Shah v. Fandom, Inc.*
No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024)....................21

*Smith v. Facebook, Inc.*
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................9

*St. Aubin v. Carbon Health Techs., Inc.*
No. 24-CV-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................20

*Tanner v. Acushnet Co.*
No. 23-cv-00346, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023)....................20

*Tos v. Mayfair Packaging Co.*
160 Cal.App.3d 67 (1984)....................18

*Walden v. Fiore*
571 U.S. 277 (2014)....................6, 9

*Will Co., Ltd. v. Lee*
47 F.4th 917 (9th Cir. 2022) .......... 7, 8

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014) .......... 19

<u>Statutes</u>

Cal. Civ. Code § 1798.100(c) .......... 16

Cal. Civ. Code § 1798.100 et seq. .......... 16

Cal. Civ. Code § 1798.105 .......... 16

Cal. Civ. Code § 1798.140(v)(1) .......... 16

Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G) .......... 16

Cal. Penal. Code § 632.01(a)(1) .......... 12

Cal. Penal Code §§ 637.2(a), (c) .......... 18

Cal. Penal Code § 638.50 .......... 2, 11, 15, 19

Cal. Penal Code § 638.51 .......... passim

Cal. Penal Code § 638.52(d)(1) .......... 12

Cal. Penal Code § 638.52(j) .......... 12

Cal. Penal. Code § 638.52(m) .......... 13

**<u>Other Authorities</u>**

Assembly Bill 929 .......... 13, 14

Assembly Bill 1924 .......... 15, 16, 21

## I. INTRODUCTION

Plaintiff Lillian Jurdi, a California resident, reached out to Defendant Carter's, Inc., a Georgia corporation, by visiting Carter's website, www.skiphop.com, which is operated outside of California. The website is not specifically geared towards California residents—its content, advertisements, and products are meant to appeal to users wherever they are located. Plaintiff alleges next to nothing about her visit to the website. Nonetheless, she asserts that her device sent "electronic impulses" to the site, which consisted of her browser information, URL, and other similar information. Plaintiff asserts that Carter's installed software created by TikTok ("TikTok Pixel" or "Pixel") on the website and that the Pixel collected the information her device sent to website in order to identify her.[1] Based on this, Plaintiff alleges that the TikTok Pixel is a trap and trace device, and that Carter's violated California Penal Code section 638.51 by installing and using the Pixel without Plaintiff's consent or a court order.

But the First Amended Complaint ("FAC") must be dismissed because Carter's is not subject to personal jurisdiction in California. Carter's is not incorporated in California, and it does not have its principal place of business here. And, as it relates to this suit, Carter's has not expressly aimed its conduct at California. Rather, Plaintiff aimed her conduct at Carter's by choosing to visit its website. Plaintiff's unilateral decision to visit Carter's website and send Carter's her information does not subject Carter's to jurisdiction in California. Indeed, this Court recently held the same in a nearly identical case. *See Heiting v. Marriott Int'l, Inc.*, No. 2:23-CV-10822, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024). Accordingly, the FAC should be dismissed.

---

[1] Plaintiff refers in the First Amended Complaint to the TikTok Pixel as the "TikTok Software," but "TikTok Pixel" is more commonly used and so Carter's uses that term in this brief.

But even if Carter's is subject to personal jurisdiction, the FAC should still be dismissed because Plaintiff fails to state a claim. Plaintiff alleges that Carter's violated section 638.51 by using a "trap and trace device" without a court order. A "trap and trace device" is a "device or process" installed on a person's phone "that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50. In simple terms, a "trap and trace device" is a device that a third party installs on a person's telephone that tells that third party who called that person's phone. For example, if law enforcement installed a trap and trace device on Person A's phone, the trap and trace device would tell law enforcement that Person A received a phone call from Person B's phone number.

Plaintiff asserts that the TikTok Pixel is a trap and trace device. But a trap and trace device is installed by one person on another person's phone without their consent. Plaintiff alleges that Carter's installed the Pixel on *its own website, not her device*. This is akin to Person A using Caller ID on his own phone to learn that Person B is calling him, which is obviously not illegal. Considering the complete mismatch between Plaintiff's theory and the statute at issue, it is no surprise that this case should be dismissed.

***First***, section 638.51 applies only to telephones, not to a website that captures information sent to it from a visitor's device. This is confirmed by the text, structure, and legislative history of section 638.51. Applying section 638.51 to a website also cannot be squared with the California Consumer Privacy Act. Moreover, Plaintiff's interpretation of section 638.51 leads to absurd results. If, as Plaintiff alleges, a trap and trace device is a device on a website that captures a user's browser information or IP address, then the websites of the California State Assembly, the Southern District of California, and the Los Angeles County Superior

Court are all currently using trap and trace devices in violation of section 638.51. That cannot be the case.

***Second***, even if the Court finds that section 638.51 applies to website software, the TikTok Pixel is not a trap and trace device because it purportedly collects the "contents" of a communication. By definition, software that collects the "contents" of a communication is not a trap and trace device.

***Third***, Carter's is exempt from liability as the provider of an electronic communication service, its website.

***Fourth***, Carter's acknowledges that some courts have denied a defendant's motion to dismiss a plaintiff's section 638.51 claim. But for the reasons explained in Section IV.E, those cases are distinguishable. The Motion to Dismiss should be granted.

## II. FACTUAL BACKGROUND

### A. Allegations In The FAC

Carter's subsidiary, The William Carter Company ("TWCC"), operates a website, www.skiphop.com (the "Website"). (FAC ¶ 5; Declaration of Keyur Patel ["Patel Decl."] ¶ 2.) Plaintiff alleges that Carter's "has partnered with TikTok to install [the TikTok Pixel] on its landing page to learn the location, source, and identity of consumers who happen to land on the Website." (FAC ¶ 8.) According to Plaintiff, when a user visits a website, the user's device generates "electronic impulses" that are sent to the website. (*Id.* ¶¶ 9, 15-16.) On Carter's website, the TikTok Pixel allegedly captures the "incoming electronic impulses" sent from a user's device, which constitute "device and browser information, geographic information, and referral tracking" along with "images of website user's [*sic*] interests" and users' "phone number, email, routing, addressing, and other signaling

information." (*Id.* ¶¶ 9, 11, 13, 16, 30.)[2] TikTok then matches this information with existing data that it has acquired through its "AutoAdvanced Matching" technology, in an effort to identify the website visitor. (*Id.* ¶ 12.)[3]

Plaintiff alleges that she visited the Website on February 29, 2024, and, while browsing the site, Neiman Marcus used the TikTok Pixel to capture the information her device sent to the Website. (FAC ¶ 9.) Plaintiff alleges that the Pixel is a trap and trace device and that Carter's violated section 638.51 by installing and using it on the Website without a court order. (*Id.* ¶¶ 15-17, 27-31.)

### B. <u>Carter's Limited Contacts With California</u>

Carter's is an international retailer that is incorporated in Georgia and has its principal place of business in Atlanta, Georgia. (Patel Decl. ¶ 2; FAC ¶ 5.) Carter's has stores in every state except Alaska, and it sells products to consumers worldwide. (Patel Decl. ¶ 3.) TWCC owns and operates the Website, where it sells products geared towards babies, toddlers, and their parents. (*Id.* ¶ 2; FAC ¶ 5.) The Website is operated by TWCC employees in Georgia. (Patel Decl. ¶ 4.) It is hosted primarily on servers located on the east coast of the United States. (*Id.*) The Website, including its content, advertisements, and products, are not tailored to a specific state. (*Id.* ¶ 6.) Rather, the Website looks and operates materially the same no matter where a user is located in the United States. (*Id.*) The same is true of the TikTok Pixel. (*Id.* ¶¶ 9-10.) Like the Website, the TikTok Pixel operates the same regardless of a user's location. (*Id.* ¶ 10.) For example, it does not prioritize data from a user based on the state that user is located in. (*Id.* ¶¶ 9-10.)

---

[2] In Plaintiff's original Complaint, she alleged that the TikTok Pixel also captured "url tracking." (*See* ECF No. 1, ¶ 11.)

[3] Plaintiff does not allege that the "AutoAdvanced Matching" technology is a trap and trace device or that it violates section 638.51. (FAC ¶¶ 15-17, 30 [alleging that Carter's violated section 638.51 by using the TikTok Pixel].)

There are a few portions of the Website that are forum specific, but they are not relevant to this litigation. For example, in accordance with state and international law, portions of the privacy policy available on the Website address the privacy rights of consumers located in California, Virginia, the European Economic Area, and the United Kingdom. (Patel Decl. ¶ 7.) Similarly, in accordance with California law and the European Union's General Data Protection Regulation, a cookie banner is displayed at the bottom of the website for visitors in California and the European Union. (*Id.*)

## III. THE COURT SHOULD DISMISS THE FAC FOR LACK OF PERSONAL JURISDICTION

### A. Burden Of Proof And Legal Standard Under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving the jurisdictional facts (i.e. the existence of "minimum contacts" between Carter's and California). *In re Boon Glob., Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). Once a defendant raises a factual challenge to personal jurisdiction, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

The district court applies the law of the forum state. *Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long arm statute allows personal jurisdiction to the extent permissible under the Fourteenth Amendment's Due Process Clause. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2013). To determine whether jurisdiction is permissible under the Due Process Clause, courts examine whether they can exercise "general jurisdiction" or "specific jurisdiction." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358-59 (2021).

**B. Carter's Is Not Subject To General Jurisdiction In California**

General jurisdiction exists only when the defendant is "essentially at home in the forum State," such as when it is incorporated or has its principal place of business in the forum state. *Daimler AG*, 571 U.S. at 127; *see also Ford Motor*, 592 U.S. at 358-59.

Here, Carter's is incorporated in Georgia, and its principal place of business is in Atlanta, Georgia. (Patel Decl. ¶ 2; FAC ¶ 5.) There is no evidence that Carter's has "continuous and systematic" contacts such that it is "essentially at home" in California. (*See id.*) Therefore, the Court does not have "general jurisdiction" over Carter's.

**C. Carter's Is Not Subject To Specific Jurisdiction In California**

In contrast to "general jurisdiction," "specific jurisdiction" "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). First, the defendant must "purposefully direct his activities" at the forum or "purposefully avail[] himself of the privilege of conducting activities in the forum." *Id.*[4] Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction "must be reasonable." *Id.* It is the plaintiff's burden to satisfy the first two prongs and the defendant's burden to satisfy the third. *Id.*

***1. Carter's did not purposefully direct its conduct at California***

A defendant "purposefully directs its activities at the forum when the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

[4] Courts apply the purposeful direction test to claims under the California Invasion of Privacy Act ("CIPA"). *See Heiting*, 2024 WL 3751276, at *3. Thus, the purposeful direction test applies Plaintiff's CIPA claim.

state." *Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021). In determining the second factor, express aiming, "the court inquires 'whether the defendant's conduct connects him to the forum in a meaningful way.'" *Heiting*, 2024 WL 3751276, at *3 (quoting *Walden*, 571 U.S. at 290).

Where, as here, a plaintiff's claim is based on the plaintiff's use of a website, courts hold that there must be "something more" than the operation of the website itself to establish express aiming. *AMA v. Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209-10 (9th Cir. 2020) (quoting *Mavrix*, 647 F.3d at 1229). The Ninth Circuit has held that "something more" includes: a website that "appeals to, and profits from, an audience in a particular state," *AMA*, 970 F.3d at 1210; a site that has "a forum specific focus," *Mavrix*, 647 F.3d at 1229-31; or where a defendant sells products via its website and causes those products to be delivered to the forum, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023). In contrast, a website visitor's exchange of information with a website is insufficient. *Herbal Brands*, 72 F.4th at 1092. So too are geo-located advertisements on a website, and the use of a website vendor located in the forum. *AMA*, 970 F.3d at 1211-12. The Ninth Circuit has also held that "set[ing] up [forum specific legal compliance] pages" on a website in anticipation of visitors "from a particular forum" accessing the site does not establish express aiming. *Will Co., Ltd. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022).

Here, Plaintiff alleges that Carter's purposefully directed its activities at California "by regularly tracking individuals in California through its website." (FAC ¶ 2.) According to Plaintiff, the TikTok Pixel "regularly track[s] individuals" by "gather[ing] device and browser information" sent from an individual's device to the Website. (*Id.* ¶¶ 2, 9, 11; Patel Decl. ¶ 8.) Sending information to a website, however, is not the "something more" that demonstrates express aiming. *See Herbal Brands*, 72 F.4th at 1092 (holding that an "interactive website" where "visitors can exchange information . . . does not establish express aiming"). This is

because the "alleged tortious conduct"—here, the use of the TikTok Pixel to collect information sent to the Website—would have occurred whether Plaintiff was located "in California, or Mississippi, or wherever else [she] might have resided." *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017). In other words, what Plaintiff alleges is merely "untargeted negligence," which is "insufficient to support specific personal jurisdiction." *See Carroll v. J.M. Smucker Company*, No. 22-cv-08952, 2023 WL 4053796 (N.D. Cal. June 15, 2023) (holding that the defendant did not expressly aim its conduct at California by installing and using the Facebook Pixel because the pixel offered "an identical experience regardless of the forum of access"). Indeed, this Court rejected a similar argument in *Heiting*, holding that a plaintiff that visited a defendant's website and sent messages to the defendant via the website's chat feature did not establish express aiming. *Heiting*, 2024 WL 3751276, at *5. This case presents a set of facts even more attenuated than *Heiting*—Plaintiff alleges that by merely visiting the Website, Carter's is subject to jurisdiction. For the reasons explained, it is not.

Moreover, Plaintiff cannot establish that Carter's expressly aimed its conduct at California based on the Website or the TikTok Pixel. The Website does not specifically appeal to California. (Patel Decl. ¶¶ 5-6.) It does not tailor advertisements to California residents. (*Id.* ¶ 6.) It operates materially the same whether a user is in California, Nevada, Florida, or any other state. (*Id.*) The same is true of the TikTok Pixel. The Pixel operates the same no matter where a user is located. (*Id.* ¶ 10.) It does not "specifically target the California market or otherwise prioritize and/or cultivate data gleaned from California users," *Heiting*, 2024 WL 3751276, at *5. (*Id.* ¶¶ 9-10.) The Website's references to California in the privacy policy and the cookie banner do not amount to express aiming because they were included on the site in anticipation of California consumers visiting the site. (*Id.* ¶ 7.) *See also Will Co.*, 47 F.4th at 926; *D'Angelo v. Gen. Motors Co.*, No.

23-CV-0985, 2024 WL 1480487, at *6 (S.D. Cal. Mar. 11, 2024) (holding that a website's "California Privacy Statement" did not establish express aiming).

Furthermore, Plaintiff's status as a California resident also does not establish express aiming. *See Walden*, 571 U.S. at 285 (explaining that "the plaintiff cannot be the only link between the defendant and the forum"). Nor does it matter that Plaintiff's harm may have occurred in California. *See Heiting*, 2024 WL 3751276, at *4 (holding that plaintiff's argument that "she is a California resident" and suffered harm in California "is not sufficient"); *Walden*, 571 U.S. at 290 ("mere injury to a forum resident is not a sufficient connection to the forum"). It also does not matter that the TikTok Pixel was developed by TikTok, a California corporation. *See Heiting*, 2024 WL 3751276, at *4 (holding that a third-party's connection to the forum was insufficient); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 952 (N.D. Cal. 2017) ("[E]mbedding third-party code cannot confer personal jurisdiction over a website operator in the forum where the third party resides.").

Finally, it is not relevant that Carter's sells products to California. Plaintiff's claim is not related to the purchase or sale of a product, and she does not allege that she purchased a product or even that she visited the website to purchase a product. *See Heiting*, 2024 WL 3751276, at *4 (holding that the defendant's "general business in California" was unrelated to the plaintiff's "privacy-related harm"); *Martin v. Outdoor Network LLC*, No. 2:23-CV-09807, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024) (holding no express aiming based on product sales where plaintiff's wiretap claims "do not involve Plaintiff making any purchase on the website or Defendant shipping products to her").[5]

---

[5] Carter's acknowledges that the *Martin* court partially relied on the Ninth Circuit's decision in *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), which was recently vacated in order to be reheard en banc. The *Martin* court's discussion of *Briskin*, however, was separate from the court's analysis of *Herbal Brands*. *See Martin*, 2024 WL 661173, at *4.

In sum, Plaintiff cannot establish that Carter's has any relevant contacts with California for purposes of this lawsuit. The Court must therefore conclude that it does not have personal jurisdiction over Carter's.

**2. *Plaintiff's claims do not arise out of or relate to Carter's California contacts***

The second prong of the specific jurisdiction analysis asks whether the plaintiff's claims "arise out of or relate to" the defendant's forum-related contacts. *Ford Motor*, 592 U.S. at 362. Here, as discussed above, Carter's does not have any California contacts relevant to this litigation. Thus, Plaintiff's claims do not arise out of or relate to Carter's California contacts because it has none.

**3. *Exercising jurisdiction over Carter's in California would be unreasonable***

As stated above, Carter's did not deliberately engage in any significant activities in California related to this suit. *See Schwarzenegger*, 374 F.3d at 802. The only forum-related conduct Plaintiff alleges is that she is a California resident, and that TikTok collected her information on the Website. Based on this conduct, and in the absence of any further allegations, the exercise of jurisdiction over Carter's in this action would be unreasonable.

## IV. THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. **Section 638.51 Applies Only To Telephone Communications, Not Website Technologies**

Trap and trace devices are devices used by law enforcement to track who is calling whom ***by telephone***. They are not devices that relate in any way to tracking on the internet. This is confirmed by the statutory text and structure, the legislative history, the context of California's overall regulatory scheme, and public policy. As a result, section 638.51 does not apply to Carter's alleged use of the TikTok Pixel.

#### 1. ***Statutory text and structure***

When interpreting a statute, the California Supreme Court has instructed courts to "begin with its text" because "statutory language typically is the best and most reliable indicator of the Legislature's intended purpose." *Larkin v. Workers' Comp. Appeals Bd.* 62 Cal.4th 152, 157 (2015). If the statute's text "depends on cross-referenced provisions," those provisions are equally indicative of the Legislature's intent. *Id.* at 160.

Section 638.51 states that "a person may not install or use a . . . trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A "trap and trace device" is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50. While the definition of "trap and trace device" does not expressly state whether it includes general website technologies that capture incoming information from a website visitor's device, the cross-referenced provisions in the statute, sections 638.52 and 638.53, confirm that it does not.

Sections 638.52 and 638.53 permit law enforcement to use a trap and trace device if certain conditions are met. Subsection (d) of section 638.52 details specific information that must be included in a court order authorizing the use of a trap and trace device. Critically, such information includes the ***telephone line*** and

***telephone number*** of the individual that law enforcement is investigating. Indeed, the subsection states that a court order permitting law enforcement to use a trap and trace device must include "[t]he identity, if known, of the person . . . in whose name is listed ***the telephone line*** to which the . . . trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1) (emphasis added). The order must also include "[t]he ***number*** and, if known, physical location of the ***telephone line*** to which the . . . trap and trace device is to be attached." *Id.* § 638.52(d)(3) (emphasis added). Furthermore, subsection (c) states that a trap and trace device shall not include the physical location of the targeted individual "except to the extent that the location may be determined from the ***telephone number***." *Id.* § 638.52(c) (emphasis added).

The multiple references to telephones in section 638.52 demonstrates that a "trap and trace device" applies only to telephonic communications. If the Legislature had intended, in 2015, for a trap and trace device to encompass communications beyond telephonic communications, it would not have required a court order authorizing the use of a trap and trace device to detail the "number" and "physical location" of a "telephone line." Indeed, other amendments to CIPA confirm that the Legislature made a deliberate choice in limiting section 638.51 to telephone communications. For example, in 2016, the Legislature enacted a new provision of CIPA, section 632.01, which prohibits the disclosure of certain confidential communications "in any forum, including . . . *Internet Web sites*." Cal. Penal. Code § 632.01(a)(1) (emphasis added). The Legislature's choice to apply section 632.01 to the internet, but omit similar language from sections 638.50-638.53, demonstrates that the Legislature intended section 638.51 to apply only to telephones. Furthermore, in 2016, one year after enacting sections 638.50-638.53, the Legislature amended section 638.52 to compensate telecommunications providers for assisting law enforcement in installing a pen register or trap and trace device. Cal. Penal Code § 638.52(j). Yet, the Legislature did not amend section 638.52 to remove the language referencing telephones. Finally, in 2022, the

Legislature again amended section 638.52. This time to prohibit a magistrate judge from authorizing the use of a pen register or trap and trace device in certain situations. Cal. Penal. Code § 638.52(m). Again, the Legislature did not remove the language referencing telephones. *See In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer* 885 F. Supp. 197, 200 (C.D. Cal. 1995) (explaining that Congress's decision to limit the Federal Wiretap Act's trap and trace provision to telephone lines could "not be assumed to be inadvertent").

In short, there is nothing in the statutory text that suggests that the Legislature intended section 638.51 to apply to a website operator that uses common website technologies to capture incoming information from a website visitor's device. Thus, the TikTok Pixel is not a trap and trace device.

**2. *Legislative history***

In addition to the statutory text, a court may consider the statute's legislative history to determine the Legislature's intent. *Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.* 29 Cal.4th 911, 920 (2003). The legislative history of sections 638.50-638.53 further supports the conclusion that the Legislature never intended for section 638.51 to apply beyond telephones.

**a. Assembly Bill 929**

California Penal Code sections 638.50-638.53 were enacted in 2015 as part of a statutory scheme that authorized state and local law enforcement to use trap and trace devices as long as certain conditions were met. (Request for Judicial Notice ["RJN"] Ex. A, p. 1].) According to the legislative history, the purpose of Assembly Bill 929 (now Penal Code sections 638.50-638.53) was "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in ***telephone surveillance***, while requiring as a precondition a standard of evidence higher than under federal law." (RJN Ex. B, p. 4 [emphasis added].) The need for the bill arose due to a conflict between federal and state law. Federal law

authorized "states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." (RJN Ex. A, p. 10].) At the time, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." (*Id.*) Thus, local and state law enforcement agencies that utilized trap and trace devices on an emergency basis were technically in violation of federal law. (RJN Ex. B, pp. 5-6].) Assembly Bill 929 remedied that problem by authorizing "state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." (*Id.*, p. 6.)

As can be seen from the above, nothing suggests that the purpose of Assembly Bill 929 was to regulate how a commercial website collects information from consumers. This is confirmed by the Assembly and Senate bill analyses which refer to pen registers and trap and trace devices as tools that law enforcement uses to collect telephone numbers. (*See* RJN Ex. A, p. 10 ["[A]nother tool law enforcement uses is called a ***'trap and trace device' which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers***." (emphasis added)]; *id.*, p. 10 ["Pen registers and track *[sic]* and trace devices track ***incoming and outgoing telephone calls***." (emphasis added)]; *id.*, p. 11 ["any location information obtained by a pen register or a track *[sic]* and trace device is limited to the information that is contained in the ***telephone number***" (emphasis added)]; Ex. B, p. 1 [stating that AB 929 "[a]uthorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in ***telephone surveillance***" (emphasis added)]; *id.*, p. 5 ["As noted above, pen registers/trap and trace devices are used by law enforcement for ***telephone surveillance*** to record incoming and outgoing ***phone numbers from a tapped line***." (emphasis added)]; Ex. C, p. 1 ["This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices

in ***telephone surveillance*** . . . .” (emphasis added)].) In contrast, the bill analyses do not mention websites, IP addresses, website technologies, or any intent by the Legislature for website visitors like Plaintiff to use the statute as a vehicle to enforce their privacy rights through civil litigation. If section 638.51 was meant to apply to commercial websites and consumers that visit such websites, the legislative history would have at least acknowledged that, particularly given the internet’s widespread use by 2015. But it does not.

**b. Assembly Bill 1924**

The Legislature further reaffirmed in Assembly Bill 1924 that section 638.51 was meant to apply only to telephones. Assembly Bill 1924 was enacted into law one year after Assembly Bill 929. Assembly Bill 1924 primarily amended California’s Electronic Communication Privacy Act (“ECPA”) (Cal. Penal Code §§ 1546 et seq.), which allowed the government to compel the production of electronic communications if the government obtained a search warrant or a wiretap order. (RJN Ex. F, pp. 6-9.) The ECPA did not, however, state whether the government could compel the production of electronic communication information pursuant to a pen register or trap and trace device. (*Id.*) Assembly Bill 1924 amended the ECPA to ensure the government could compel the production of electronic communication information pursuant to a pen register and trap and trace device. (*Id.*)

Critically, the bill analyses of Assembly Bill 1924 explain that the “electronic information” that pen registers and trap and trace devices obtain are “***call detail records***.” (RJN Ex. F, p. 7 [emphasis added].) In other words, the bill analyses confirm that the electronic communication information that is captured by a trap and trace device is phone numbers, not information derived from the internet, like browser information or IP addresses. Importantly, both the ECPA and section 638.50 (which defines pen registers and trap and trace devices) use the term “electronic communication,” suggesting that when the Legislature defined a trap and trace device as a device that “identif[ies] the source of a . . . electronic

communication" it meant communications via telephone, not the internet. This is further confirmed by the bill analyses of Assembly Bill 1924, which state that trap and trace devices collect telephone numbers. (*See* RJN Ex. D, p. 7 ["A 'trap and trace device' records what ***numbers had called a specific telephone***, i.e., all ***incoming phone numbers***." (emphasis added)]; Ex. E, p. 1 ["pen register/trap and trace-device[s] . . . are ***telephone surveillance devices used to record incoming and outgoing phone numbers***" (emphasis added)].)

### 3. *California Consumer Privacy Act*

When interpreting a statute, courts "endeavor to harmonize it with other enactments to the extent possible." *Lexin v. Superior Court* 47 Cal.4th 1050, 1095 (2010). Here, Plaintiff's interpretation of section 638.51 undermines the California Consumer Privacy Act ("CCPA").

Enacted in 2018, three years after section 638.51, the CCPA regulates the collection of "personal information" by businesses. Cal. Civ. Code § 1798.100 et seq. The definition of "personal information" is broad: "'Personal Information' means information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer." Cal. Civ. Code § 1798.140(v)(1). In addition, personal information specifically includes: (1) "Identifiers such as . . . email address"; (2) "Internet or other electronic network activity information, including . . . a consumer's interaction with an internet website application"; and (3) "Geolocation data." Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G). Importantly, the CCPA permits businesses to collect personal information as long as the business complies with the CCPA. *See* Cal. Civ. Code § 1798.100(c). And the CCPA grants consumers the "right to request that a business delete any personal information about the consumer that the business has collected from the consumer." Cal. Civ. Code § 1798.105.

In light of the CCPA, Plaintiff's interpretation of section 638.51 is illogical. If, according to Plaintiff, section 638.51 prohibits businesses from collecting any information generated from a website visitor's device that identifies the website visitor, why did the Legislature permit businesses to collect such information and afford consumers the right to request that businesses delete such information? The only logical interpretation is that section 638.51 does not apply to website technologies that capture incoming information from a website visitor's device. For this additional reason, Plaintiff's proffered interpretation of section 638.51 is incorrect.

**4. *Public policy***

After examining the statutory text, structure, and legislative history, if the statute's meaning is still uncertain, "it is appropriate [for a court] to consider the consequences that will flow from a particular interpretation." *Copley Press, Inc. v. Superior Court* 39 Cal.4th 1272, 1291 (2006).

Interpreting the statute as Plaintiff proposes would lead to unreasonable results that the Legislature never contemplated. Properly understood, a trap and trace device is installed by one person on another person's device without consent. But Plaintiff alleges that a party that installs software on its own website to collect information sent to it by a website visitor's device is using a trap and trace device. If that is the case, then every website that obtains such information would be subject to criminal liability, ***including the California State Assembly and courts across California***.[6] And the reach of Plaintiff's interpretation would not stop there—it

[6] The California State Assembly's website states that it "automatically collect[s] and store[s]" a visitor's "Internet Protocol Address," "web browser," and the "web pages or services [a visitor] accessed" on the website. *See Privacy and Conditions of Use Policy*, https://www.assembly.ca.gov/privacy-and-conditions-use-policy. Similarly, the United States District Court for the Southern District of California and the Los Angeles Superior Court collect website visitors' IP addresses, browser names, and other similar information on their respective websites. *See* United States District

would extend to ordinary Caller ID that every person with a phone uses. That cannot be what the Legislature intended when it enacted section 638.51, especially because neither the statute itself nor the legislative history ever mentions the internet, websites, or website technologies. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) ("The Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants.").

**5. *The statute must be construed in Defendant's favor***

To the extent there is any doubt about the proper interpretation of section 638.51, the Court must construe the statute in Carter's favor because (1) the statute is penal in nature and created new liability; and (2) the rule of lenity requires criminal statutes, even when used as the basis for a civil claim, to be construed in the defendant's favor.

First, statutes that carry statutory penalties that are penal in nature "should receive a strict construction" in favor of defendants. *Saracco Tank and Welding Co. v. Platz* 65 Cal.App.2d 306, 315 (1944). This is especially true where a statute creates a ***new*** statutory liability, as opposed to amending an old statute or codifying a common law offense. *Tos v. Mayfair Packaging Co.*, 160 Cal.App.3d 67, 75 (1984). Here, section 638.51 is penal because the provision that imposes a penalty for a violation of section 638.51, section 637.2, does so without regard to compensation for any actual loss suffered. Cal. Penal Code §§ 637.2(a), (c); *Hale v. Morgan* 22 Cal.3d 388, 397-99 (1978). Further, the California Supreme Court recognized that section 637.2 "explicitly created a ***new***, statutory private right of action, authorizing any person who has been injured by any violation of the

---

Court, Southern District of California, *Privacy Policy*, https://www.casd.uscourts.gov/Privacy-Policy.aspx; Superior Court of California, County of Los Angeles, *Web Site Privacy Statement*, https://www.lacourt.org/website/HO0050.aspx.

invasions-of-privacy legislation to bring a civil action." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 115-16 (2006). Indeed, the statute's location in the Penal Code itself is sufficient to suggest that it is penal in nature. *See People v. Moon*, 193 Cal.App.4th 1246, 1250 (2011).

Second, section 638.51 must be construed in Defendant's favor because the rule of lenity requires courts to "interpret an ambiguous criminal statute in the defendant's favor." *See People v. Mutter*, 1 Cal.App.5th 429, 436 (2016). The rule of lenity applies even where, as here, a criminal statute is used as the basis for a civil claim. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *People v. Mobile Oil Corp.*, 143 Cal.App.3d 261, 276 (1983).

As a result, to the extent there is any doubt about the proper interpretation of section 638.51, the above doctrines compel the Court to find in favor of Carter's.

**C. Even If Website Technologies Can Be Trap And Trace Devices, The TikTok Pixel Is Not A Trap And Trace Device**

Under section 638.50, a trap and trace device "captures the incoming electronic or other impulses . . . or other dialing, routing, addressing, or signaling information . . . ***but not the contents of a communication***." Cal. Penal. Code § 638.50 (emphasis added). Thus, if the device collects the "contents of a communication," it is not a trap and trace device.

Courts analyzing CIPA claims use the Federal Wiretap Act's definition of "contents." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Under the Federal Wiretap Act and CIPA, the "contents" of a communication "refer[] to the intended message conveyed by the communication, and do[] not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts have held that a video recording of a website visitor's interaction with a website are "contents" of a communication. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (holding that the defendant

had intercepted the contents of the plaintiff's communications by "recording . . . a video of Plaintiff's interactions with Nike's website"); *Tanner v. Acushnet Co.*, No. 23-cv-00346, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (same). Additionally, courts hold that when website software like the TikTok Pixel collects URLs, the software is collecting the contents of a communication. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Courts reason that URLs are "contents" because they reveal the pages that a user has visited on a particular website or search terms that a user has entered. *Id.*; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024).

Here, Plaintiff alleges the TikTok Pixel collects the contents of a communication in two ways. First, Plaintiff alleges that the TikTok Pixel captures "images of website user's interests" on "virtually every page of Carter's website." (FAC ¶ 13.) Thus, as alleged, the Pixel collects the contents of a communication because, like a video recording, it permits Carter's and TikTok to view each page that a website user visits on the Website. (*Id.* ¶ 14.) Second, to the extent Plaintiff still alleges that the TikTok Pixel collects URLs of each webpage a user visits (as she did in her original Complaint), the Pixel is collecting the contents of a communication because TikTok learns what pages a particular user has visited. *See Brown*, 685 F. Supp. 3d at 935. As a result, the Pixel is not a trap and trace device.

**D. <u>Defendant Is Exempted From Liability As A Provider Of An Electronic Communication Service</u>**

Even if the TikTok Pixel is a trap and trace device, Carter's is not liable because section 638.51(b) permits it to use a trap and trace device on its website. Under section 638.51(b), a provider of an electronic communication service is permitted to use a trap and trace device where consent of the user is given. Here, Carter's is an electronic service provider because it provides (through TWCC) the Website, which allows its customers to communicate with it. *See Konop v.*

*Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (holding that under the Federal Wiretap Act a "website fits the definition of 'electronic communication'"). Carter's also consented to the TikTok Pixel by installing it on its website. *See In re Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*, 9 F.C.C. Rcd. 1764 (1994) (holding under analogous situation that telephone company would not be liable for installing a trap and trace device because it was a provider of an electronic communication service). Accordingly, Carter's is exempt from liability.

**E. *Moody*, *Greenley*, And *Shah* Are Distinguishable**

Plaintiff will likely rely on *Moody v. C2 Educational Systems Inc.*, No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024), *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), and *Shah v. Fandom, Inc.*, No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) to support her claim. These decisions, however, are distinguishable.

In *Moody*, the plaintiff alleged that the defendant installed the TikTok Pixel on its website and used the Pixel to collect her information. 2024 WL 3561367, at *1. The court held that the Pixel was a trap and trace device. But the court did not consider all of the arguments that Carter's advances here. That is, the court did not consider sections 638.50-53's legislative history, the CCPA, or the public policy implications of its ruling. *Moody* is therefore distinguishable from this case.

*Greenley* is also different from this case. *Greenley* concerned the installation of a device on the plaintiff's phone (not alleged here), which the plaintiff alleged was a pen register (not alleged here). Additionally, the court did not consider sections 638.52 and 638.53, the legislative history, the CCPA, or any of the public policy consequences of its interpretation of section 638.51.

Finally, like *Greenley*, *Shah* is distinguishable because the plaintiffs alleged that tracking software installed on their devices was a pen register—neither of which is alleged here. 2024 WL 4539577, at *1. Moreover, the court did not consider Assembly Bill 1924 or the CCPA.

## V. **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion.

Dated: December 11, 2024 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.

**L.R. 11-6.1 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,941 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 11, 2024 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ P. Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.