Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Lillian Jurdi*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LILLIAN JURDI, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

CARTER'S, INC., a Georgia corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:24-cv-04651-JLS-BFM

**PLAINTIFF LILLIAN JURDI'S OPPOSITION TO DEFENDANT CARTER'S, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

<u>Hearing</u>
Date: January 31, 2025
Time: 10:30 am
Courtroom: 8A

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .................... 1

I. INTRODUCTION .................... 1

II. RELEVANT FACTUAL BACKGROUND .................... 2

III. ARGUMENT .................... 3

A. The Court Has Specific Personal Jurisdiction Over Defendant .................... 3

1. The Commission of a Tortious Act in California Alone Provides Sufficient Minimum Contacts to Support the Exercise of Personal Jurisdiction .................... 4

2. Plaintiff's Claim "Arises from or Relates to" Defendant's Forum-Related Activities Because Defendant Injured Plaintiff in California .................... 7

a. Many courts apply the "but for" test .................... 7

b. The Court should follow *Rodriguez v. Aquatic Sales Solutions* and *Fudge v. Delta Air Lines, Inc.* .................... 8

3. Purposeful Direction .................... 9

a. Intentional Act .................... 10

b. Express Aiming .................... 10

c. Knowledge .................... 11

4. Exercising Personal Jurisdiction Would Be Reasonable .................... 11

B. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet .................... 15

1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute .................... 16

2. Defendant's Arguments Lack Legal Support....19

IV. CONCLUSION....22

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE....23

CERTIFICATE OF SERVICE....24

## TABLE OF AUTHORITIES

Cases

*Abbott Power Corp. v. Overhead Electric Co.*, 60 Cal. App. 3d 272 (1976) ..................... 6

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) .......................................................7, 8

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989) ............... 10

*Briskin v. Shopify, Inc.*" (citing No. 22-15815, reh'g en banc granted, 101 F.4th 706 (May 14, 2024) ................................................................................................ 14

*Calder v. Jones*, 465 U.S. 783 (1985) ............................................................................ 9

*Chien v. Bumble Inc.*, 641 F. Supp. 3d 913 (S.D. Cal. 2022) ........................................... 5

*Climax Portble Mach. Tools, Inc. v. Trawema GmbH*, No. 3:18-CV-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020) .......................................................... 5

*Core-Vent v. Nobel Indus AB*, 11 F.3d 11 F.3d 1482 (9th Cir. 1993) ............................. 12

*Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) ......................................................................................... 14

*DocuSign, Inc. v. Clark*, No. 21-CV-04785-WHO, 2022 WL 2136071 (N.D. Cal. June 14, 2022) ......................................................................................... 5

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ................................................. 9

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018) ....4, 11

*Fudge v. Delta Air Lines, Inc.*, No. 2:24-CV-04531 HDV SSC, 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) ...................................................................................8, 9

*Greenley v. Kochava, Inc.* (S.D. Cal. July 2023) 684 F. Supp. 3d 1024.....................17, 19

*Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024) ....... 19

*Herbal Brands, Inc. v. Photoplaza, Inc.* 72 F.4th 1085 (9th Cir. 2023) .......................7, 10

*Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ............................................. 18

*Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024)............... 18

*Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627 (2018) ......................................................... 20

*Lungren v. Deukmejian*, 45 Cal. 3d 727 (1988) ............................................................ 18

*Maggos v. Helm*, 185 F.3d 868, 1999 WL 402448 (9th Cir. 1999) ................................ 12

*Magnecomp Corp. v. Athene Co.*, 209 Cal. App. 3d 526 (2009) ....................................... 6

*Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 1, 17, 21

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985) .......... 4

*Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024) .. 19

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......... 8

*Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) .......... 1

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (2004) .......... 7, 10, 11

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 5, 11

*Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .......... 11

*Terracom v. Valley Nat. Bank*, 49 F.3d 555 (9th Cir. 1995) .......... 12, 13

*TikTok Inc. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024) .......... 14

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020) .......... 4

Statutes

Cal. Civ. Code § 1798.175 .......... 20

Cal. Penal Code § 629.51(a)(2) .......... 16, 18

Cal. Penal Code § 630 .......... 12

Cal. Penal Code § 638.51 .......... 1, 15, 16, 19, 21

Other Authorities

Rest.2d Conf. of Laws, § 36, p. 147 .......... 6

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I. INTRODUCTION

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other Defendants before it, seek the Court's assistance to bail them out of their privacy collection practices in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of a prohibited "Trap and Trace" device in California Penal Code § 638.51 because of the way it is designed to collect information from Californians without their consent. As Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." *C2*, 2024 WL 3561367, at *2. Judge Klausner also affirmed that conclusion again just last week. *Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024).

## II. RELEVANT FACTUAL BACKGROUND

Defendant is a "designer and marketer of children's apparel, accessories, and gift items" that operates a website at skiphop.com ("Website"). FAC ¶¶ 5, 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8-20. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code § 638.51 (California's "Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, FAC ¶¶ 10-11, 13, 24. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 10. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts. *E.g.*, FAC ¶¶ 10, 17, 22-26. If people like Plaintiff actually wanted Defendant's marketing and advertising to

be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 17.

## III. ARGUMENT

### A. The Court Has Specific Personal Jurisdiction Over Defendant.

Defendant operated a website that intentionally and repeatedly invaded the privacy of potentially millions of Californians in violation of California law and now argues that it would be fundamentally unfair and unconstitutional for it to be held accountable for that in California. While personal jurisdiction analyses can in some cases become fact-intensive exercises in abstract concepts, here it poses a very simply question – is it unfair for someone to be haled into the court covering the jurisdiction where the defendant caused the injury? Of course not. Defendant installed code on its website and sent that code to Plaintiff's computer in California in order to extract private information and violate Plaintiff's privacy for profit. Moreover, Defendant obtained that code pursuant to a contract it made with TikTok, a California company. So the question is whether it is reasonable for a California court to exercise personal jurisdiction and hear a case involving a California plaintiff who was in California during the relevant time, Defendant caused Plaintiff an injury which Plaintiff necessarily suffered in California, Defendant caused that

injury by sending electronically sending that code to California, and Defendant obtained that code, shared the data, and engaged in every part of the scheme jointly with a California company. California is the *only* reasonable place for this case to be heard.

**1. <u>The Commission of a Tortious Act in California Alone Provides Sufficient Minimum Contacts to Support the Exercise of Personal Jurisdiction.</u>**

As an initial matter, Defendant applies the wrong test for personal jurisdiction. Plaintiff alleges Defendant tortiously misappropriated Plaintiff's data within California using TikTok Software, which *alone* satisfies the minimum contacts requirement. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985) ("The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]."); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 673 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) ("By sending the malicious code, defendants electronically entered the forum state seeking out plaintiffs' servers, which were a necessary component to transmit the malicious code to the users."). This is based on the "well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (citations omitted) ("*Freestream*"). This means that "*Paccar*, not *Calder*, is the proper starting place." *Freestream*, 905 F.3d at 606. "In other words, the purposeful

direction standard would be satisfied." *DocuSign, Inc. v. Clark*, No. 21-CV-04785-WHO, 2022 WL 2136071, at *4 (N.D. Cal. June 14, 2022).

It is implausible to conclude that the wrongdoing alleged was committed anywhere besides California, and indeed Defendant does not and cannot suggest it occurred in any alternative location. Plaintiff was located within California at all relevant times, and if that weren't enough, TikTok itself is also located within California. FAC ¶ 4 (alleging Plaintiff "is, and at all times relevant to the allegations herein has been, a citizen of California located and residing within the Central District of California."). There is no basis on a motion to dismiss, under this standard of review, or in Defendant's Motion, to conclude that the location where the alleged tort was committed, that is, where Plaintiff's privacy rights were violated, is anywhere besides California. Numerous courts have concluded that the wrongful conduct in unauthorized collection of data with an improper intent at least partially takes place where that data is stored. *Climax Portable Mach. Tools, Inc. v. Trawema GmbH*, No. 3:18-CV-1825-AC, 2020 WL 1304487, at *4-*5 (D. Or. Mar. 19, 2020) ("courts also have found that acquisition of trade secrets from a server in the forum state with knowledge of its location, or other intentional and knowing improper use of a computer server in the forum state, creates enough minimum contacts to support personal jurisdiction"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) (concluding minimum contacts were sufficiently alleged for a violation of CIPA based on the company's chatbox on its website); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 929 (S.D. Cal. 2022) (minimum contacts established when defendant, among other things,

"collected personal and location information for the purpose of sending targeted 'marketing information, promotions, and advertisements.").

"A state has a special interest in exercising jurisdiction over those who commit tortious acts within its territory. Therefore, it is reasonable that a state should exercise jurisdiction over those who commit or cause to be committed in the state what is claimed to be a tortious act." *Magnecomp Corp. v. Athene Co*., 209 Cal. App. 3d 526 (2009); *Abbott Power Corp. v. Overhead Electric Co*., 60 Cal. App. 3d 272, 278-279 (1976) (California may properly exercise jurisdiction over an individual whose tortious conduct it seeks to deter); *see also*, Rest.2d Conf. of Laws, § 36, p. 147 ("A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.").

But even if that alone were not enough, the Supreme Court's opinion in *Calder* provides ample basis for finding it reasonable to hold Defendant accountable in a California court. *Calder v. Jones*, 465 U.S. 783 (1985). In *Calder*, a California plaintiff brought a suit for defamation against a writer and the editor of the National Enquirer, a national newspaper based in Florida, but with a circulation of approximately 600,000 in California. The allegedly libelous story concerned a California resident whose television career was centered in California. The writer lived in Florida and did not personally visit California but relied on phone calls to sources in California for information contained in the article. On these facts the Supreme Court concluded that jurisdiction over defendants was proper "based on the 'effects' of their Florida conduct in California." *Calder v. Jones*,

465 U.S. at 789. Defendants knew their article "would have a potentially devastating impact upon [plaintiff]. And they knew that the brunt of that injury would be felt by [her] in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. at 789-90. Under the circumstances, the court found defendants must reasonably expect to be "haled into court" in California to defend against plaintiff's tort claims. *Id*. at 790.

**2. Plaintiff's Claim "Arises from or Relates to" Defendant's Forum-Related Activities Because Defendant Injured Plaintiff in California.**

Plaintiff satisfies all three parts of the purposeful direction test for Defendant's tort. *See Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (2004). Plaintiff begins with the second prong of the specific jurisdiction analysis before proceeding to the first and third prongs. "The second prong of the specific jurisdiction inquiry requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal Brands, Inc. v. Photoplaza, Inc*. 72 F.4th 1085, 1096 (9th Cir. 2023).

**a. Many courts apply the "but for" test.**

In determining whether a claim "arises out of" the non-resident's forum-related activities, many courts apply a "but for" test. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Specifically, a claim "arises out of" the defendant's forum-related activities if the plaintiff would not have suffered loss "but for" those activities. *Id*. ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiff's]

claims against [Defendant] have arisen?"). The Ninth Circuit relies on the "but for" test to determine if this second prong is satisfied. *See Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). This test is satisfied if "[Plaintiff] would not have been injured but for [Defendant's] contacts in [the forum]." *Ballard*, 65 F.3d at 1500. And but for Defendant sending the TikTok Software to Plaintiff while he was within California through its website Plaintiff would not have been injured.

**b. The Court should follow *Rodriguez v. Aquatic Sales Solutions* and *Fudge v. Delta Air Lines, Inc.***

In *Rodriguez v. Aquatic Sales Solutions LLC*, 2:23-cv-05198-CAS-Ex (May 29, 2024), in denying Aquatic Sales' motion to dismiss for alleged lack of personal jurisdiction, the Court found that the defendant's conduct in operating a website that sold aquatic supplies, and its sale of physical goods to California residents through its website "related to" the plaintiff's California Invasion of Privacy Act claim. "The Website, and its accompanying chat feature, were accessible in California." *Id*.

Similarly, in *Fudge v. Delta Air Lines, Inc.*, No. 2:24-CV-04531 HDV SSC, 2024 WL 4445985, at *3 (C.D. Cal. Oct. 4, 2024) the court found there was personal jurisdiction over a similar CIPA claim. It explained that because the plaintiffs were using their devices in California, the allegation that the defendant "records and disseminates Plaintiffs' and Class Members' data, communications, and personal information in California" was sufficient to establish personal jurisdiction. *Id*. ("In alleging these facts, Plaintiffs make a

sufficient prima facie showing to meet the specific jurisdiction requirements for both of their claims").

### 3. **Purposeful Direction.**

Where, as here, a case is based on an alleged tort, courts in the Ninth Circuit employ a purposeful direction analysis under the three-part *Calder* "effects" test. *Freestream*, 905 F.3d at 603-04 (citing *Calder*, 465 U.S. at 791). Under the *Calder* test, a plaintiff must allege a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum." *Calder*, 465 U.S. at 783. This is easily established here where Defendant inserted code into its website that (a) was from a company with its global headquarters in Los Angeles, (b) Defendant sent that code to Plaintiff in California, and (c) that code caused Plaintiff's computer in California to send out personal information that was used in violation of California's Trap and Trace Law. *See Fudge*, 2024 WL 4445985, at *3. At a conceptual level Defendant's website is no different than if Defendant had placed a phone call into California to achieve the same result. The fact that Defendant automated the process through computer code, so that it may potentially occur millions of times, does not change the fact that, on each occasion,

Defendant was essentially making a phone call each time to place the illegal code into California computers.

**a. <u>Intentional Act.</u>**

Here, Plaintiff alleges that Defendant operates the Website and sells headphones for videogaming, snowboarding, and skateboarding, including to California residents. FAC ¶¶ 1, 11, 23. Defendant installed TikTok Software on its Website created by TikTok in order to identify website visitors. FAC ¶¶ 12–16. These qualify as intentional acts. Defendant therefore committed an intentional act by embedding TikTok Software on the Website for the purpose of de-anonymizing visitors to obtain their identity for marketing and economic purposes.

**b. <u>Express Aiming.</u>**

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Where a tort is "intentional," the Ninth Circuit has "found jurisdiction in the plaintiff's home forum," even though the directions of the intentional act and the known impact diverged, because "in such cases the 'acts are performed for the very purpose of having their consequences felt in the forum state.'" *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

For example, in *Herbal Brands*, 72 F.4th at 1092-94, the Ninth Circuit held that a defendant "expressly aimed" its conduct at a forum if, "in its regular course of business, [it] sells a physical product via an interactive website and causes that product to be

delivered to the forum." Similarly in, *Swarts*, 2023 WL 5615453, the court held that Home Depot had purposefully directed its conduct at the forum by "selling a physical product to [plaintiff] via its interactive website." *Id.* Here, Defendant purposefully directed its activities toward the Central District by selling "antivirus, malware, ransomware, and hacking protection services" through its Website—that also ran the TikTok Software—to California residents. FAC ¶ 5.

**c. <u>Knowledge.</u>**

With regards to the third element, Defendant caused harm that it knew would be suffered in California, that is, the taking of Plaintiff's data. Here, Defendant was aware that it was using software to identify anonymous visitors to the Website. Thus, the Court should find that Defendant purposefully directed its conduct toward California in engaging in tortious conduct.

**4. <u>Exercising Personal Jurisdiction Would Be Reasonable.</u>**

It is well settled that if the first two prongs are satisfied, then the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit has identified seven factors relevant to this inquiry. *Freestream*, 905 F.3d at 607 (listing factors). In other words, the defendant must show that exercising jurisdiction would be unreasonable. *Id.*

Taking all allegations in the complaint as true, the seven factors weigh in favor of asserting jurisdiction : (1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the

extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See also*, *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). None of the factors is dispositive itself; therefore, the Court must balance all seven. *Id*.

The seven factor test weighs heavily in Plaintiff's favor. Even on the merits, there is no greater burden for Defendant to defend this action in California compared to anywhere else that the Website reaches. California has expressly declared a very strong interest in protecting its citizens from illegal surveillance, *see* Cal. Penal Code § 630, and no other state involved has any meaningful interest in providing a forum and jury for enforcing California's privacy laws.

More specifically as to each factor, Defendant did not particularly seek out a California buyer but nonetheless marketed its products on the Website, where California customers could purchase them, and sent code to Plaintiff's device in California. Defendant did so intentionally and knowingly, and thereby "purposefully interjected" itself into affairs with California. *See Core-Vent v. Nobel Indus AB*, 11 F.3d 11 F.3d 1482, 1488 (9th Cir. 1993). Additionally, Defendant committed an intentionally tortious act directed at California by taking Plaintiff's private data in California. *See Maggos v. Helm*, 185 F.3d 868, 1999 WL 402448 (9th Cir. 1999) (unpublished). The Ninth Circuit concluded there was personal jurisdiction because the defendants' actions were directed, via telephone and

correspondence, at plaintiff's Hawaiian counsel. In addition, the plaintiff alleged defendants knew plaintiff would suffer harm in Hawaii, and Hawaii had an overriding interest in providing redress for those of its citizens who had been tortiously injured. Accordingly, the first prong weighs strongly in Plaintiff's favor.

Assuming Defendant is an Arizona corporation, California is not too inconvenient for it to defend itself here. There is minimal conflict with Arizona's sovereignty, so the third factor weighs in Plaintiff's favor. California has a greater interest than Arizona in adjudicating the suit because it is obligated to protect its citizens from harmful acts of non-resident defendants, so the fourth factor weighs in Plaintiff's favor.

The fifth factor considers where the bulk of the evidence and witnesses are located. This factor is neutral and favors neither party because the bulk of the proffered evidence is available on the internet and can be accessed in California or anywhere else.

The sixth factor addresses the importance of California as a forum for convenient and effective relief for Plaintiff. *Terracom*, 49 F.3d at 561. Since Plaintiff's home is in California, California is clearly a more convenient forum for Plaintiff. The seventh factor weighs in Defendant's favor, because Arizona is another proper forum where Plaintiff may bring its claim, though inconvenient to Plaintiff.

Therefore, Defendant cannot satisfy its burden of showing that the third prong of the specific jurisdiction test is not met because Defendant cannot establish that the exercise of personal jurisdiction would be unreasonable.

Because the exercise of personal jurisdiction over Defendant would be reasonable the Court must deny the Motion.[1] The alternative would mean that it would be unfair for even the State of California to bring a civil case against Defendant for violating the privacy of potentially millions of Californians in collaboration with a social media platform whose behavior and affiliations have been so concerning that it motivated Congress to pass a law about TikTok specifically. Protecting Americans from Foreign Adversary Controlled Applications Act into law. Pub. L. No. 118-50, div. H; *see generally TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) (subsequent history omitted). The Supreme Court will decide whether that was within Congress's powers, but there can't be any meaningful debate it would be unfair or unreasonable for Congress or the States to hold such actors to account in the jurisdictions where they have engaged in the wrongful behavior and instead constitutional principles of fair play must depend solely on the vagaries such as cloud server locations and electronic packet transfer protocols.

[1] If the Court disagrees, Plaintiff requests the right to amend and permission to conduct jurisdictional discovery into the topics the Court found insufficient. Facts related to the contracts between Defendant and TikTok, the data Defendant received about Californians including Plaintiff, locations of relevant servers where data was sent and received, and the scope of Defendant's wrongdoing for Californians could all help further establish the nexus between Defendant's conduct and California. In addition, if the Court has any hesitance, the Ninth Circuit recently noted in *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *2 (9th Cir. Dec. 17, 2024) (unpublished), that the district court's personal jurisdiction on remand is "a question that may be informed by this court's forthcoming en banc decision in *Briskin v. Shopify, Inc.*, No. 22-15815, *reh'g en banc granted*, 101 F.4th 706 (May 14, 2024)."

### B. <u>The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet</u>

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in § 638.51 applies to internet communications because internet communications obviously involve the transfer of data "by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Penal Code § 638.50(a) (incorporating the meaning of "electronic communication" set forth in § 629.51(a)(2)). The analysis is straightforward, the relevant terms are clearly defined and lack any ambiguity, and the statutory language speaks directly to the issue and indisputably shows that § 638.51 applies to all electronic communications and is not limited to telephone communications. Every judge who has addressed the issue has found it to be clear and straightforward, but Defendant seeks to make the issue appear complicated and confusing because it does not like that result. This is also not a question of whether an older statute applies to a new form of technology because § 638.51 was passed in 2015 by legislators who were obviously very aware of internet communications and clearly understood that the definition chose for "electronic communication" included the internet. The analysis below will go through CIPA's statutory provisions to prove the California Legislature clearly chose to cover internet communications under CIPA and then explain why Defendant's scattershot arguments to the contrary are simply wrong, ignore dispositive provisions, or can otherwise be rejected out of hand.

### 1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute.

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
> * * *
> (5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c). And in the same section just a few lines earlier § 638.50(a) instructs that the terms "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51." § 638.50(a). The definition for "electronic communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, the term "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire,

radio, electromagnetic, photoelectric, or photo-optical system." By incorporating this definition for electronic communication into the definition of a trap and trace device in § 638.50(c) CIPA clearly encompasses internet communications because internet communications involve the transfer of data by "a wire, radio, electromagnetic, photoelectric, or photo-optical system." There is simply no way to read the definition of trap and trace devices adopted by the California Legislature and conclude that when it used this expansive language the Legislature actually meant to cover only telephone communications and nothing else.

Defendant's arguments simply have no basis in any of CIPA's statutory definitions discussed above and courts have repeatedly and universally rejected it. If the Legislature had intended to limit trap and trace devices to telephone communications then that is what CIPA would have said. But it doesn't. Judge Breyer in the Northern District recently explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). The expansive language chosen by the legislature requires the Court to reject Defendant's attempt to ignore its plain and unambiguous terms. Defendant urges the Court to reject each of these opinions as "distinguishable" because none of them addressed all of the exact arguments Defendant makes here, and because

*Shah* and *Greenley* concerned pen registers. Mot. at 21. But § 638.50(a) of CIPA requires the statutory definition of "pen register" in § 638.50(b) and "trap and trace device" in § 638.50(c) to both use the exact same definition of "electronic communication" found in § 629.51(a)(2) so the analyses are identical. This exact same argument was also rejected in *C2* because "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" *C2*, 2024 WL 3561367, at *2 (citing Cal. Penal Code §§ 638.50(b)–(c)).

Defendant's attempts to invoke selective parts of the legislative history are similarly unhelpful to its attempts to evade the statute's plain meaning under California's rules for statutory interpretation. "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). If the California Legislature had wanted to limit trap and trace devices to just telephones then the very first line of Assembly Bill 929 adding § 638.50(a) to the Penal Code would have said that "electronic communication means telephone communications" instead of expressly adopting the expansive definition of "electronic communication" set forth in § 629.51(a). 2015 Cal. Legis. Serv. Ch. 204 (A.B. 929).

Moreover, in addition to the numerous federal decisions discussed above which reached this conclusion, numerous state court judges have also reached the same conclusion. Their opinions have been attached to Plaintiff's accompanying Request for Judicial Notice. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 at 4 (July 31, 2024) ("neither CIPA nor the modern version of the federal statutes cited in *Digital Analyzer* limit the definition of 'pen register' or 'trap and trace device' to physical devices attached to telephone lines."); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 at 3 (September 17, 2024) ("The plain language of section 638.51 does not limit the statute to telephone-based communications."); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

In short, Penal Code § 638.51 unambiguously applies to internet communications and the FAC alleges the two elements necessary to establish a violation of Penal Code § 638.51: (i) Defendant installed a prohibited device (pen register or trap and trace); (ii) without a court order. *E.g.*, *Greenley v. Kochava, Inc.* (S.D. Cal. July 2023) 684 F. Supp. 3d 1024, 1050-51. Plaintiff has therefore properly stated a claim under § 638.51.

**2. <u>Defendant's Arguments Lack Legal Support</u>**

Notably, Defendant spends very little space addressing the actual statutory sections discussed above that every court has relied on and found central to their decisions. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of

which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities.

Defendant argues that CIPA does not apply to the internet because of the subsequent enactment in 2018 of the California Consumer Privacy Act ("CCPA"). Mot. at. 16-17. Obviously CCPA itself has no bearing on the plain meaning of CIPA because it was passed three years later by a different Legislature and the CCPA does not amend or even reference CIPA in any way. Defendant nonetheless argues that because the CCPA now exists interpreting CIPA's prohibition on trap and trace devices as applying to the internet is "illogical" and would "undermine" the CCPA. Mot. at. 16-17. By arguing that a subsequently enacted statute requires a prior statute to be interpreted more narrowly despite the absence of any such language, Defendant is in essence arguing that a portion of CIPA was repealed by implication with the passing of the CCPA. But repeals by implication are disfavored when interpreting California statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.") (citation omitted). In order to invoke the doctrine of implied repeal there must be no rational basis for harmonizing the two statutes, and the statutes must "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.* (cleaned up). None of that applies here, and far from being repugnant and irreconcilable courts have found that "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5. Moreover, Defendant's argument is expressly foreclosed by the

plain text of the CCPA. Defendant plainly ignores the provision of the CCPA stating that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. The CCPA also explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.* So, even if the CCPA and CIPA were not complementary and were instead in complete and irreconcilable conflict such that the terms of the CCPA controlled, then § 1798.175 of CCPA itself would require that CIPA be applied in this case because it affords greater privacy protections. *Mirmalek*, 2024 WL 5102709, at *5.

Defendant also argues that it cannot be using a trap and trace device because it mistakenly reads the FAC as alleging that Defendant *also* collects the contents of communications. Mot. at 19-20. But even if Defendant's use of the TikTok Software may have captured some amount of the content of the communications (a fact not alleged in the FAC), there is simply nothing in CIPA that immunizes Defendant from liability because it *too invasive*. The same exact argument was made and rejected in C2, "[h]aving found that the browser and device data plausibly fall within the scope of the statute, the Court need not determine whether the form data also falls within the scope of the statute" on a motion to dismiss. *C2*, 2024 WL 3561367, at *4.

Defendant finally argues that it is exempt from liability because it is an electronic service provider and it consented to its own use of a trap and trace device. Mot. at 20-21. But Defendant simply isn't a "provider" of an "electronic communication service," and

even if it were then it could not also be the "user of that service" who can provide the necessary consent under § 638.51(b)(5). The FAC clearly alleges that Plaintiff was the user, and it is Plaintiff's consent that is necessary. It would make no sense for a privacy-protection statute to allow Defendant to avoid liability by simply consenting to its own invasion of Plaintiff's privacy. *See C2*, 2024 WL 3561367, at *4 (rejecting argument at the motion to dismiss stage that website operators are also the website users the trap and trace law was designed to protect).

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: January 13, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Lillian Jurdi

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Lillian Jurdi, certifies that this brief contains 5,563 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 13, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Lillian Jurdi

**CERTIFICATE OF SERVICE**

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: January 13, 2025 **TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Lillian Jurdi