SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
ccardon@sheppardmullin.com
JAY T. RAMSEY, Cal Bar No. 273160
jramsey@sheppardmullin.com
ALYSSA SONES, Cal Bar No. 318359
asones@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LILLIAN JURDI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CARTER'S, INC., a Georgia corporation; and DOES 1 through 25, inclusive,

Defendant.

Case No. 2:24-cv-04651-JLS-BFM

*Hon. Josephine L. Staton*

**DEFENDANT CARTER'S, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

[*Filed concurrently with Revised Declaration of Keyur Patel*]

Date: February 21, 2025
Time: 10:30 a.m.
Ct. Rm.: 8A

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION ........ 2

A. Carter's Is Not Subject To Specific Jurisdiction In California ........ 2

1. The Paccar test does not apply because no intentional tort occurred in California ........ 2

2. Carter's did not purposefully direct its conduct at California ........ 4

3. Plaintiff's claim does not arise out of or relate to Carter's California contacts ........ 7

4. Exercising jurisdiction over Carter's in California would be unreasonable ........ 7

5. Jurisdictional discovery is not warranted ........ 8

III. THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM ........ 9

A. The Legislature Did Not Intend For Section 638.51 To Apply To Website Technologies Like The TikTok Pixel ........ 9

1. The statutory text and legislative history demonstrate that section 638.51 does not apply to the TikTok Pixel ........ 9

2. Other tools of statutory interpretation demonstrate that section 638.51 does not apply to the TikTok Pixel ........ 10

B. Even If Website Technologies Can Be Trap And Trace Devices, The TikTok Pixel Is Not A Trap And Trace Device Because It Collects The Contents Of A Communication ........ 11

C. Defendant Is Exempt From Liability As A Provider Of An Electronic Communication Service ........ 13

IV. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AMA Multimedia, LLC v. Wanat*
970 F.3d 1201 (9th Cir. 2020) .......... 6

*Born v. Celtic Mktg. LLC*
No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273 (C.D. Cal. May 20, 2020) .......... 6

*Briskin v. Shopify, Inc.*
87 F.4th 404 (9th Cir. 2023) .......... 8

*Calder v. Jones*
465 U.S. 783 (1985). .......... 1, 3, 4

*Chien v. Bumble Inc.*
641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 3

*Climax Portable Machine Tools, Inc. v. Trawema GmbH*
No. 3:18-CV-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020) .......... 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23 (2003) .......... 11

*Franklin v. Midwest Recovery Systems, LLC*
No. 8:18-cv-02085-JLS-DFM, 2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) .......... 12

*Freestream Aircraft (Bermuda) Limited v. Aero Law Group*
905 F.3d 597 (2018) .......... 3, 4

*Fudge v. Delta Air Lines, Inc.*
No. 2:24-cv-04531-HDV-SSC, 2024 WL 4445985 (C.D. Cal. Oct. 24, 2024) .......... 7

*Hasson v. FullStory, Inc.*
114 F.4th 181 (3d Cir. 2024) .......... 5

*Heiting v. Marriott Int'l, Inc.*
No. 2:23-cv-10822-JLS-MAA, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ........ 6, 7, 8

*hiQ Labs. Inc. v. LinkedIn Corp.*
31 F.4th 1180 (9th Cir. 2022) ........ 9

*Martin v. Outdoor Network LLC*
No. 2:23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ........ 5

*Mirmalek v. Los Angeles Times Communications LLC*
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 12

*Moody v. C2 Educational Systems Inc.*
No. 2:24-cv-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) 11, 12

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*
757 F.2d 1058 (9th Cir. 1985) ........ 2, 3

*Rodriguez v. Aquatic Sales Solutions LLC*
735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 5

*In re Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*
9 F.C.C. Rcd. 1764 (1994) ........ 13

*Shah v. Fandom*
No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........ 12

*Swarts v. Home Depot, Inc.*
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 3

*Walden v. Fiore*
571 U.S. 277 (2014) ........ 1, 6, 7

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*
472 F. Supp. 3d 649 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) ........ 3

*Zarif v. Hwareh.com, Inc.*
No. 23-CV-0565-BAS-DEB, 2024 WL 1268167 (S.D. Cal. Mar. 25, 2024) ........ 5

**State Cases**

*Casillas v. Transitions Optical, Inc.*
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sep. 09, 2024)................13

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Penal Code § 629.51 ....................................................................................9

Cal. Penal Code § 631 ......................................................................................11

Cal. Penal Code § 632.01 ....................................................................................9

Cal. Penal Code § 638.50 ..............................................................................9, 11

Cal. Penal. Code § 638.52(d)(1)...........................................................................9

California Penal Code § 638.51......................................................................passim

# I. INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") should be dismissed for lack of personal jurisdiction and failure to state a claim. In her Opposition, Plaintiff argues that Carter's is subject to personal jurisdiction for two reasons. Plaintiff first argues that Carter's committed an intentional tort in California and is thus per se subject to jurisdiction here. Plaintiff relies on cases where a defendant physically enters the forum state and commits an intentional tort or hacks a computer server in the forum. Neither situation is alleged to have happened here. Plaintiff alleges she was harmed when she visited Carter's website—which is operated in Georgia.[1] If a tort was committed, it occurred outside of California. Thus, Plaintiff's first basis for personal jurisdiction has no merit.

Plaintiff's second basis fares no better. Plaintiff argues that Carter's is subject to personal jurisdiction under the *Calder* purposeful direction test for four reasons: (i) it sells hacking protections services through its website to California residents; (ii) it sent code to Plaintiff's computer; (iii) it contracted with a California company, TikTok; and (iv) Plaintiff was injured in California. Arguments (i) and (ii) are easily refuted because Plaintiff never alleges either in her FAC—nor does argument (i) even make sense because Carter's sells products geared toward babies and toddlers, not hacking protection services. Arguments (iii) and (iv) similarly fail because it is black-letter law "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Accordingly, the Court should dismiss this case for lack of personal jurisdiction.

---

[1] The Carter's website at issue is www.skiphop.com (the "Website"), which is owned by Skip Hop, Inc. ("Skip Hop") and operated by The William Carter Company ("TWCC"), both of which are subsidiaries of Carter's. *See infra* fn. 2. Unless stated otherwise, all references to "Carter's" include Skip Hop and TWCC.

Even if the Court reaches the merits, the Court should still dismiss the FAC for failure to state a claim for the reasons stated in the Motion and below. The Legislature never intended California Penal Code section 638.51 to apply to the internet, websites, or internet technologies like the TikTok Pixel. Plaintiff's arguments in the Opposition do not squarely address Carter's arguments or grapple with the absurd results that will flow from her interpretation of section 638.51. Accordingly, the Court should dismiss this case, and because Plaintiff has now had two chances to plead her claim, dismissal should be with prejudice.[2]

## II. THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

### A. Carter's Is Not Subject To Specific Jurisdiction In California[3]

#### 1. *The Paccar test does not apply because no intentional tort occurred in California*

Plaintiff argues that the Court should apply the personal jurisdiction test announced in *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985) rather than the test derived from the Supreme Court's decision

[2] Filed concurrently with this Reply brief is a revised declaration of Keyur Patel ("Revised Patel Declaration"). Mr. Patel's original declaration ("Patel Declaration"), submitted in support of Carter's motion to dismiss (ECF No. 20-1), contained inaccurate information. Specifically, the Patel Declaration stated that Carter's was incorporated in Georgia. (Patel Decl. ¶ 2.) Carter's is incorporated in Delaware. (Revised Patel. Decl. ¶ 3.) The Patel Declaration also stated that TWCC owned and operated the Website. (Patel Decl. ¶¶ 2, 4.) Skip Hop, a New York corporation, owns the Website, and TWCC, a Massachusetts corporation, operates the Website in Georgia. (*Id.* ¶ 4; Revised Patel Decl. ¶ 4.) Carter's does not believe that the identified corrections change the Court's personal jurisdiction analysis. Nonetheless, Carter's will not object if Plaintiff wishes to file a response to this Reply brief, specifically addressing the impact, if any, that the corrections in the Revised Patel Declaration have on this Court's personal jurisdiction analysis.

[3] Plaintiff does not argue that Carter's is subject to general personal jurisdiction in California.

in *Calder v. Jones*, 465 U.S. 783 (1985). (Opp. at 4.) In *Paccar*, the Ninth Circuit held that the "commission of an intentional tort in a state is a purposeful act that will satisfy the [minimum contacts test]." 757 F.2d at 1064. In contrast, when a tort is committed outside the forum state, the *Calder* purposeful direction test applies. *Freestream Aircraft (Bermuda) Limited v. Aero Law Group*, 905 F.3d 597, 605 (2018). Under that test, the Court evaluates whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely be felt in the forum state. (Mot. at 6-7.)

Plaintiff argues the *Paccar* test applies because "the wrongdoing alleged [in her FAC] was committed" in California. (Opp. at 5.) According to Plaintiff, Carter's "tortiously misappropriated [her] data within California" and sent code to her computer in order to extract her private information. (*Id.* at 3-5.) But Plaintiff never alleges in her FAC that Carter's tortiously misappropriated her data in California or that Carter's sent code to her computer—indeed, Plaintiff does not support either assertion with a citation to her FAC. (*See id.* at 3-4.) The "wrongdoing" that Plaintiff alleges in the FAC is the installation and use of the TikTok Pixel, which occurred *on Carter's website*. (FAC ¶¶ 8-9, 30.) The Website is operated by Carter's employees in Georgia and is primarily hosted on servers on the east coast of the United States. (Patel Decl. ¶¶ 2, 4; Revised Patel Decl. ¶¶ 2-5.) The location of the alleged wrongdoing is therefore Georgia or the east coast of the United States—not California.

The cases that Plaintiff relies on do not change this conclusion. Confusingly, Plaintiff cites multiple cases that apply the *Calder* purposeful direction test—thus, even Plaintiff appears to concede that the *Calder* test should apply. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 669 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 926 (S.D. Cal. 2022). And the cases that Plaintiff cites that do apply the *Paccar* test are

completely different from this case. In *Freestream*, the defendant was physically present in the forum state when he allegedly made defamatory statements about the plaintiff. 905 F.3d at 603. In *Climax Portable Machine Tools, Inc. v. Trawema GmbH*, No. 3:18-CV-1825-AC, 2020 WL 1304487 (D. Or. Mar. 19, 2020), the plaintiff alleged that the defendants accessed a server that "they knew was located [in the forum state] to acquire trade secret information." *Id.* at *5. No similar facts are alleged in this case.

In sum, the Court should apply the *Calder* purposeful direction test.

**2. *Carter's did not purposefully direct its conduct at California***

As stated in the Motion, under the *Calder* purposeful direction test, it is Plaintiff's burden to prove that Carter's "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [Carter's] knows is likely to be suffered in the forum state." (Mot. at 6-7 [quoting *Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021)].)

As set out in the Motion, Plaintiff failed to establish express aiming because: (1) Plaintiff sent information to Carter's website (not the other way around); (2) the Website and the TikTok Pixel operate the same whether a user is located in California or any other state; (3) Plaintiff's status as California resident and TikTok's status as California corporation are not jurisdictionally relevant; and (4) Carter's sales of goods to California residents is unrelated to Plaintiff's privacy claim. (Mot. at 7-10.) Plaintiff does not clearly address these arguments in her Opposition. Plaintiff instead argues that Carter's "purposefully directed its activities toward the Central District by selling 'antivirus, malware, ransomware, and hacking protection services' through its Website—that also ran the TikTok Software—to California residents." (Opp. at 11.) Plaintiff doesn't allege this in her FAC, and the allegation doesn't make sense because Carter's sells products geared toward babies

and toddlers. It appears that Plaintiff's counsel mistakenly copied this sentence from a brief in a different case.[4]

Even if Plaintiff had argued that Carter's is subject to personal jurisdiction because it sells products to California residents, it wouldn't matter. As stated in the Motion, the sale of goods into California is unrelated to Plaintiff's privacy claim. (Mot. at 9.) Plaintiff does not allege that she purchased a good on the Website or even that she visited the Website to purchase a good. Courts addressing similar situations have declined to exercise personal jurisdiction. *See Martin v. Outdoor Network LLC*, No. 2:23-cv-09807, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024) (holding that a defendant's sale of goods into California was unrelated to the plaintiff's privacy claim regarding the chat function on the defendant's website); *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2024 WL 1268167, at *4 (S.D. Cal. Mar. 25, 2024) (holding that the defendant's sales of products to California residents was not jurisdictionally relevant because the plaintiff did not allege she ordered any products or that the harm she suffered was premised on the sale or delivery of a product); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 195 n.5 (3d Cir. 2024) (declining to consider the defendant's sales of products into the forum state because the plaintiff's "wiretapping claims neither involve a 'physical' product nor arise out of (or relate to) [the defendant's] brick-and-mortar operations in Pennsylvania").[5]

---

[4] This also appears to have occurred on pages 10 and 13 of the Opposition.

[5] *Rodriguez v. Aquatic Sales Solutions LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024), which Plaintiff relies on, is distinguishable. (Opp. at 8.) In *Rodriguez*, the court held that the defendant's sales of products into California were relevant for purposes of personal jurisdiction because users of the allegedly unlawful chat feature could "ask questions about products" or "seek assistance regarding products they purchased in the past." 735 F. Supp. 3d at at 1219. Here, Plaintiff does not allege that anything similar occurred.

Plaintiff offers three other arguments that are not specifically asserted in the express aiming section of her brief but nonetheless could be construed as related to it, so Carter's addresses them here. First, Plaintiff argues that Carter's expressly aimed its conduct at California because it "sent . . . code to Plaintiff in California." (Opp. at 3-4, 8-10.) As stated, this argument has no merit because Plaintiff does not allege in her FAC that Carter's sent code to her computer.

Second, Plaintiff argues that Carter's expressly targeted California because it contracted with TikTok, a California company, and installed the TikTok Pixel on the Website. (Opp. at 3, 9.) As stated in the Motion, courts have repeatedly held that a defendant's relationship with a third-party that happens to reside in the forum state does not establish express aiming. (Mot. at 9.) *See also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 n.6 (9th Cir. 2020) ("*Walden* made clear that the third-party advertiser's behavior cannot be attributed to the defendant as a contact."). The Court has previously rejected this exact same argument:

> [A]n out-of-state defendant's mere agreement with a third-party located within the forum, pursuant to which that third-party independently operates an advertising or solicitation campaign, does not satisfy the first prong of the three-part jurisdictional analysis set forth in *Schwarzenegger*, and is thus an insufficient basis for an exercise of specific jurisdiction over the foreign defendant.

*Born v. Celtic Mktg. LLC*, No. 8:19-cv-01950-JLS-ADS, 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020); *Heiting v. Marriott Int'l, Inc.*, No. 2:23-cv-10822-JLS-MAA, 2024 WL 3751276, at *1, 4 (C.D. Cal. Aug. 5, 2024) (holding that an out-of-state defendant that allegedly embedded code from a California entity on its website was not subject to personal jurisdiction in California).

Third, Plaintiff argues that Carter's expressly aimed its conduct at California because Plaintiff accessed the Website in California and was injured in California. (Opp. at 3.) But in *Walden*, the Supreme Court rejected this exact argument, holding that knowledge of the plaintiff's "strong forum connections," and that the plaintiff will suffer harm in the forum state, "impermissibly allows a plaintiff's

contacts . . . to drive the jurisdictional analysis." 571 U.S. at 289. Thus, Plaintiff's "arguments that she is a California resident and was located in California at the time the harm occurred is not sufficient." *Heiting*, 2024 WL 3751276 at *4.[6]

In sum, Plaintiff has not proven that Carter's expressly aimed its conduct at California.

**3. *Plaintiff's claim does not arise out of or relate to Carter's California contacts***

As stated in the Motion, Plaintiff has failed to meet her burden under the second prong because Carter's does not have any suit-related contacts with California. (Mot. at 10.) Thus, Plaintiff's section 638.51 claim does not arise out of or relate to Carter's California contacts because it has none. (*Id.*)

**4. *Exercising jurisdiction over Carter's in California would be unreasonable***

As stated in the Motion, exercising jurisdiction over Carter's would be unreasonable because Carter's does not have California contacts related to this litigation. (Mot. at 10.) The seven-factor test that Plaintiff applies in the Opposition also favors Carter's. (Opp. at 11-14.) Under the first factor, Carter's did not send code to Plaintiff's device in California (*id.* at 12) or take Plaintiff's private data in California (*id.*). Plaintiff sent her data to Carter's. (FAC ¶¶ 9, 14.) Thus, Carter's did not purposefully interject itself into the forum state's affairs. Under the second factor, there is a significant burden in defending this suit in California because the

[6] The Court should not follow *Fudge v. Delta Air Lines, Inc.*, No. 2:24-cv-04531-HDV-SSC, 2024 WL 4445985 (C.D. Cal. Oct. 24, 2024), which Plaintiff relies on. (Opp. at 8.) In *Fudge*, the court held—without any substantive analysis—that the defendant was subject to personal jurisdiction in California because the plaintiffs "used their devices within California." *Id.* at *3. The court's analysis contravenes *Walden* by impermissibly allowing the plaintiffs' connections to the forum state to drive the jurisdictional analysis rather than the defendant's connections. *See Walden*, 571 U.S. at 289.

relevant evidence and witnesses are located in Georgia, where Carter's operates the Website. (Patel Decl. ¶ 4.) Under the third and fourth factors, there is minimal conflict between California and Georgia because California has little interest in adjudicating conduct that did not occur within its borders. Under the fifth factor, the most efficient resolution of the case would occur in Georgia, where the Website is operated. Under the sixth factor, California is not a convenient location for Plaintiff because, again, all relevant conduct occurred in Georgia. Finally, the seventh factor favors Carter's because there are two alternative forums: Georgia and Delaware. (Revised Patel Decl. ¶ 3.)

#### 5. *Jurisdictional discovery is not warranted*

Plaintiff requests jurisdictional discovery on the same topics that this Court rejected in *Heiting*. 2024 WL 3751276, at *5. None of the topics that Plaintiff seeks discovery on will change this Court's analysis and thus the Court should reject Plaintiff's request for jurisdictional discovery for the same reasons it did so in *Heiting*. Additionally, the Court should reject Plaintiff's request that this Court withhold its decision until the Ninth Circuit issues its en banc opinion in *Briskin v. Shopify, Inc.* (Opp. at 14 n.1.) The facts in *Briskin* are nothing like this case. In *Briskin*, the plaintiff alleged that the defendant extracted data from his device. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 409-10 (9th Cir. 2023). Here, Plaintiff alleges the opposite—that she sent her data to the Website and then it was captured by the TikTok Pixel. (FAC ¶¶ 9, 14.) Thus, even if the Ninth Circuit holds that the defendant in *Briskin* is subject to personal jurisdiction in California, it will not change the Court's analysis in this case.

## III. THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

### A. The Legislature Did Not Intend For Section 638.51 To Apply To Website Technologies Like The TikTok Pixel

#### 1. *The statutory text and legislative history demonstrate that section 638.51 does not apply to the TikTok Pixel*

As set forth in the Motion, the statutory text and legislative history show that section 638.51 was meant to apply to telephones and not the internet. (Mot. at 11-17.) In the Opposition, Plaintiff argues that if the Legislature intended to limit section 638.51 to telephone communications, then the Legislature would have said so in the text of the statute. (Opp. at 17-18.) But the converse is also true: If the Legislature intended section 638.51 to apply to the internet and websites, it would have explicitly said so, but it didn't. The statute, including the definition of "electronic communication" that Plaintiff heavily relies on, does not mention websites or the internet. Cal. Penal Code §§ 629.51, 638.50. In recent years, when the Legislature has intended to apply a provision of the California Invasion of Privacy Act ("CIPA") to the internet, it has explicitly said so in the text of the statute. For example, in 2016, the Legislature enacted section 632.01, which states that it applies to "Internet Web sites." Cal. Penal Code § 632.01. No similar language is present in the definition of a trap and trace device under section 638.50. Moreover, Plaintiff completely ignores the explicit references to telephones in section 638.52. *See, e.g.*, Cal. Penal. Code § 638.52(d)(1). Given the Legislature's lack of precision in defining what forms of communication section 638.51 regulates, the statute is, at the very least, ambiguous.

When statutory text is ambiguous, courts look to the statute's legislative history to discern the Legislature's intent. *See hiQ Labs. Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (considering a statute's legislative history where the meaning of the statutory text was "debatable"). As explained in the Motion,

unlike the statutory text, section 638.51's legislative history is clear: it repeatedly defines trap and trace devices as law enforcement tools used in telephone surveillance. (Mot. at 13-16.) Plaintiff does not address this argument in her Opposition. Accordingly, section 638.51's text and legislative history demonstrate that it does not apply to a website operator like Carter's that uses common website technologies like the TikTok Pixel on its website.

**2. *Other tools of statutory interpretation demonstrate that section 638.51 does not apply to the TikTok Pixel***

As stated in the Motion, the conclusion that section 638.51 does not apply to internet technologies is not only supported by its text and legislative history but also by examining the California Consumer Privacy Act ("CCPA"), public policy, the rule of lenity, and the rule that statutes that carry statutory penalties should be construed in favor of the defendant. (Mot. at 16-19.)

Plaintiff addresses only Carter's argument regarding the CCPA. (Opp. at 20-21.) Before turning to that argument, it is worth reiterating the absurd results that will flow from Plaintiff's interpretation of the statute. As stated in the Motion, under Plaintiff's interpretation, the websites of the California State Assembly, the Los Angeles Superior Court, and the United States District Court for the Southern District of California are all violating section 638.51 by collecting the same information that Plaintiff alleges that Carter's collects on its website. (Mot. at 17.) It is telling that Plaintiff does not even attempt to explain why the Legislature would have enacted a statute that criminalizes itself and the courts of this State.

As to the CCPA, Plaintiff mischaracterizes Carter's argument. Plaintiff asserts that Carter's is arguing that the CCPA impliedly repealed section 638.51. (Opp. at 20-21.) Not so. Carter's argues that the CCPA is simply another resource that the Court can use to interpret section 638.51. As explained in the Motion, the CCPA regulates the exact conduct that is the subject of Plaintiff's FAC. (Mot. at 16-17.) It thus makes little sense for the Legislature to have enacted a

comprehensive statutory scheme governing information obtained on internet websites if section 638.51 already regulated the same subject matter. This supports the interpretation that section 638.51 was never meant to regulate such conduct in the first place.

**B. Even If Website Technologies Can Be Trap And Trace Devices, The TikTok Pixel Is Not A Trap And Trace Device Because It Collects The Contents Of A Communication**

As set forth in the Motion, a trap and trace device captures routing, addressing, or signaling information "but not the contents of a communication." (Mot. at 19.) As alleged, the TikTok Pixel collects contents—images of a website user's interests and URLs. (*Id.* at 20.) Thus, the TikTok Pixel is not a trap and trace device.

Plaintiff argues that even if the TikTok Pixel collects the contents of a communication it is still a trap and trace device. (Opp. at 21.) But, as stated, the statutory text expressly states that a trap and trace device does not collect the contents of a communication. Cal. Penal Code § 638.50(c) ("but not the contents of a communication"). Second, there is already a provision of CIPA that prohibits the collection of content information—section 631(a), which prohibits wiretapping the "contents or meaning" of a communication. Cal. Penal Code § 631. Plaintiff's interpretation of section 638.51 as applying also to the contents of a communication would render section 631(a) superfluous. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be avoided.").

Plaintiff's reliance on *Moody v. C2 Educational Systems Inc.*, No. 2:24-cv-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) to support her argument is misplaced because the *Moody* court did not consider the argument that Carter's makes here. In *Moody*, the plaintiff alleged that the TikTok Software collected two categories of information: (1) browser and device data and (2) form

data entered by the visitor. *Id.* at *3. The defendant argued that the first category of information was too vague to plausibly fall within the definition of a trap and trace device under section 638.50, and that the second category of information constituted "contents," and so also did not meet the definition of a trap and trace device. *Id.* After holding that the first category of information plausibly fell within the scope of section 638.50, the court reasoned that it did not need to examine the second category of information because even if that information constituted "contents," "a defendant may not dismiss only a portion of a claim under Rule 12(b)(6)." *Id.* The court cited as support *Franklin v. Midwest Recovery Systems, LLC*, No. 8:18-cv-02085-JLS-DFM, 2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) in which this Court rejected a defendant's motion to dismiss only a portion of the plaintiff's UCL claim. *Id.* at *1.

Here, Carter's is not arguing that the Court should dismiss Plaintiff's section 638.51 claim only as it relates to content information that the TikTok Pixel collects. Carter's is arguing that the Court should dismiss Plaintiff's section 638.51 claim because the TikTok Pixel can't be a trap and trace device if, as Plaintiff alleges, it collects the contents of a communication. Moreover, to the extent the *Moody* court's holding can be read as permitting a trap and trace device to collect content information, that holding is not only at odds with the statute's plain language but also the holdings other of district courts. *See Shah v. Fandom*, No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) (denying motion to dismiss section 638.51 claim because the plaintiffs alleged the "Trackers record addressing information, *but not the content of the outgoing communication* transmitted from the user's computer or smartphone to Fandom's website" (emphasis added)); *Mirmalek v. Los Angeles Times Communications LLC*, No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (same).

In sum, as alleged, the TikTok Pixel is not a trap and trace device because it collects the contents of a communication.

### C. Defendant Is Exempt From Liability As A Provider Of An Electronic Communication Service

As set forth in the Motion, Carter's is exempt from liability because it is the provider of an electronic communication service, its website, and it consented to installing and using the TikTok Pixel on its website. Plaintiff argues that Carter's is not a provider of an electronic communication service but does not explain why. Courts have held in analogous cases that a defendant that provides a website is an electronic communication service provider under section 638.51(b). *See Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) (explaining that "an electronic communication service provider includes website operators"). Plaintiff also argues that she is the relevant user of Carter's website and so she must provide consent. (Opp. at 22.) Plaintiff is wrong. The relevant user that must provide consent is the user that has the trap and trace device installed on their device. *See In re Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*, 9 F.C.C. Rcd. 1764, 1780 (1994). Here, that is Carter's. And Carter's consented to the TikTok Pixel when it installed the Pixel on its website.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Motion.

Dated: January 24, 2025 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.

**L.R. 11-6.1 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,199 words, which complies with the word limit of L.R. 11-6.1 and this Court's standing order.

Dated: January 24, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ P. Craig Cardon*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Specially Appearing Defendant*
CARTER'S, INC.